CITIZENS NATIONAL BANK OF OKLA-HOMA CITY, OKLAHOMA, Northwest National Bank of Oklahoma City, Oklahoma, Penn Square National Bank of Oklahoma City, Oklahoma, and Founders National Bank of Oklahoma City, Oklahoma, Plaintiffs in Error,

v.

BANKING BOARD OF the STATE of Oklahoma et al., Defendants in Error.

No. 42209.

Supreme Court of Oklahoma.

July 5, 1967.

Ames, Daugherty, Bynum, Black, Asha-branner & Rogers, Elliott, Woodard & Rolston, Oklahoma City, for plaintiffs in error.

Robert McChesney, State of Oklahoma, and Cook, O'Toole & Tourtellotte, Oklahoma City, for defendants in error.

PER CURIAM:

This is an appeal from the Court of Bank Review, which court was created under the provisions of the Oklahoma Banking Code of 1965, enacted by the Thirtieth Oklahoma Legislature, as Chapter 161 S.L. 1965, pp. 195 to 274, inclusive (Tit. 6 O.S., 1965 Supp., §§ 101–1503, both inclusive). This case began when, on March 10, 1966, Messrs. David D. Benham, H. Dale Cook, J. LeRoy Faulkner, Ralph Graves, C. A. Henderson, Joe R. Homsey, D. N. Pope, Delos W. Rentzel, Randolph Shaw and R. A. Young filed their application with the State Banking Board for permission to organize a bank, and for authority to engage in the banking business, under the name of Shepherd Mall State Bank at Oklahoma City.

After notice of a public hearing before said Banking Board on said application had been given, and protests and/or objections thereto had been received by said Board from other Oklahoma City banks, the Board, after such a hearing, at which extensive testimony and documentary evidence was introduced, both against, and in support of, the application, issued its order dated April 29, 1966, approving said application upon the condition that the proposed bank make a bona fide application for membership in the Federal Deposit Insur-ance Corporation (FDIC). A portion of said order reads as follows:

"The Board has ascertained to its satis-faction:

"1. that the public need and advan-tage will be promoted by the establish-ment of Shepherd Mall State Bank.

"2. that conditions in the City of Oklahoma City and community in which the Shepherd Mall State Bank will trans-act business afford reasonable promise of successful operation of Shepherd Mall State Bank. * * *."

Thereafter, the four of the objecting banks that appear here as plaintiffs in error, and will hereinafter be referred to collectively as "protestants", appealed to the Court of Bank Review, as prescribed in Tit. 6 O.S., 1965 Supp., § 207. Thereafter, on July 18, 1966, the Court of Bank Review entered its order affirming the Banking Board's above described order. In said order, said court specifically negated all four of the statutory grounds for reversing, or modifying, such Banking Board orders (see § 207 subd. C, supra) and decreed, among other things, that the order there appealed from was "supported by substantial evidence in the record."

During the following week, the protes-tants filed their motion for a new trial by the Court of Bank Review, and thereafter, on August 26, 1966, said Court entered its order overruling said motion. On Septem-ber 1st thereafter, protestants filed notice of their intention to appeal from said court to this Court, and, on September 21, 1966, filed their petition in error for this appeal, referring to it as an appeal "in simplified form".

Thereafter, the defendants in error filed their motion in this court to dismiss this ap-peal on the ground (stated in general terms) that the protestants' petition in er-ror was not filed here in time to give this court jurisdiction under the statutes gov-erning such appeals. After the issues thus raised had been joined by appropriate pleadings and been argued in briefs, this court entered an order on January 24th of

this year overruling said motion to dismiss, without prejudice to renewal in the protestants' brief on the merits of the case.

As "PROPOSITION I" of the brief of defendants in error amounts to a renewal of the previous motion to dismiss, we will deal with it before considering the arguments of the respective parties relative to the merits of this appeal. As the Banking Board of this State has been included with the applicant organizers of Shepherd Mall State Bank as "defendants in error", our continued use of the collective term "applicants" will, for the sake of brevity, include said Board.

In support of their plea for dismissal of this appeal, applicants cite the provisions of Rule 4(a) and (b) of this Court's rules governing appeals is simplified form (see O.S.1965 Supp., p. 195 following Tit. 12, § 990) and argue that the Court of Bank Review's order of July 18, 1966, is the "final order complained of" and "the final order or decision to be reviewed" herein, within the meaning of those expressions as used in said Rule, to support their position that protestants' notice of intention to lodge this appeal (filed, as aforesaid, on September 1, 1966) and their petition in error herein (filed, as aforesaid, on September 21, 1966) were not filed within the "ten days" and "thirty (30) days", respectively, prescribed by said Rule. In further support of their motion to dismiss, applicants argue that, in its hearing of an appeal from the State Banking Board, the Court of Bank Review determines no new issues of fact (as in a trial de novo) but, as to factual matters, determines only whether the Board's order is "supported by substantial evidence" on the basis of the record made before the Board. They say it follows that protestants' filing of a motion for a new trial was unnecessary and unauthorized, and could not correctly have had an effect of extending their time to file notice of appeal to, or a petition in error in, this court, past the dates of July 28th and August 18th, 1966, respectively.

Applicants recognize that paragraph D of § 207, supra, makes a decision of the Court of Bank Review "subject to appeal *as in other civil cases*" (Emphasis added), but they argue that such an appeal should be regarded as in the same category as those arising out of proceedings before the Corporation Commission, in which we have held no motion for a new trial is necessary (Garrison v. State, Okl., 420 P.2d 474) rather than being regarded in the category of those emerging out of court trials, wherein we have held that the 1963 Legislature's amendment of Tit. 12 O.S.1961, § 651, requires the filing of motions for a new trial in all cases—those involving issues of law, as well as those involving issues of fact. See Poafpybitty v. Skelly Oil Co., Okl., 394 P.2d 515; Stokes v. State et al., Okl., 410 P.2d 59, and Evans v. Wilkinson, Ex'x., et al., Okl., 419 P.2d 275. In Garrison v. State, supra, we recognized that appeals to this court from orders of the Corporation Commission are governed by special provisions of our State Constitution, noted that all our previous decisions interpreting them had held that the filing of motions for a new trial were not necessary for such appeals and stated:

"* * * It must be assumed that the Legislature was aware of our prior decisions holding that § 651 (Tit. 12, O.S. 1961) did not apply to appeals from the Commission. Had the Legislature intended to change existing law, we are of the opinion it would have expressly so stated."

Likewise, in view of what we said in Poafpybitty, supra, promulgated in July, 1964, and of the extensive attention given that opinion in legal circles, we think it is reasonable to assume that had the Thirtieth Oklahoma Legislature not intended the broad application given therein to the Twenty-Ninth Legislature's amendment of Sec. 651, in June, 1963, to extend to the Oklahoma Banking Code of 1965, and its § 207 subd. D, supra, that Legislature would have so provided in the drafting of said Code, Burgin v. Mid-Continent Pet. Corp.,

188 Okl. 645, 112 P.2d 802, cited by applicants, is inapplicable here not just because it arose prior to the 1963 amendment of § 651, supra, but because it involved the Unemployment Compensation Law, as enacted in 1936, with provisions differing extensively from the legislation involved here nor do we consider applicable here Modern Builders, Inc. v. Board of Adjustment of the City of Tulsa, 193 Okl. 141, 141 P.2d 800, also cited by applicants, which, as the opinion therein states, involved an appeal from a city ordinance.

 In view of the foregoing, we hold that the filing of a motion for a new trial in the Court of Bank Review is necessary to the perfection of an appeal to this Court from that Court, and that, where such appeal is in the "Simplified Form" referred to in this Court's Rules implementing the provisions of § 990, supra, the written notice of intention to appeal, and the petition in error referred to in Rule 4(a) and (b) may be filed within ten days and thirty days, respectively, after the date of the Court of Bank Review's ruling on said motion. Consistent with this conclusion the applicants' motion to dismiss this appeal is hereby overruled.

Adverting now to the merits of this appeal—the protestant banks' arguments for reversal of the Court of Bank Review's order are presented under the single proposition that said order "is not supported by substantial evidence in the record." Their arguments concerning the order's lack of sufficient evidentiary support are all directed at the factors mentioned in the hereinbefore quoted portion of the Banking Board's order, namely: (1) Public need and advantage, and (2) reasonable promise of successful operation. Protestants' reason for treating the evidence on these two factors together is made clear in their brief's statement that: " * * * if there is no public need or advantage in the establishment of the proposed bank, the conditions in the community in which the bank would propose to transact business do

not afford reasonable promise of successful operation."

Undisputed facts reflected in the record are: That the large area referred to as the Shepherd Mall Shopping Center consists of a large Sears store at the corner of 23rd Street and Pennsylvania Avenue, and the Shepherd Mall, west of it, on the corner of 23rd and Villa Streets, with both of these two buildings almost completely surrounded by paved parking areas. The Mall building contains 675,000 square feet of floor space, with room for many retail establishments therein, connected by a large air conditioned mall covering 9,000 square feet of floor space. The parking area around this building has room for the parking of 4500 automobiles.

Preliminary to their subject application for the bank charter, the hereinbefore named organizers and incorporators of Shepherd Mall Bank engaged the Bureau of Public Research at the University of Oklahoma to conduct a study to determine the feasibility of such a bank in the Shepherd Mall Shopping Center. According to Dr. Francis Cella, Director of said Bureau and a University of Oklahoma economics professor, who testified before the Banking Board in support of the application, the initial stages of the Bureau's study, completed with a written report thereon in 1966, included determining the areal extent of the portion of Oklahoma City that such a bank would serve, and from which such a bank would derive its business. The area selected is circular in shape, with a radius of approximately two miles around Shepherd Mall Shopping Center, and is referred to as the proposed bank's "primary service (and/ or) trading area." It is bounded on the east by North Walker Street, on the west by Tulsa Street, on the north by 50th Street, and on the south by Reno Street. This is the same area studied by the same Bureau in August, 1964, in connection with an application for a national bank charter. Some of the conflicting conclusions set forth in the Bureau's reports on the two studies or surveys (made only two years

apart) became the subject of some of the cross examination and redirect examination of Dr. Cella, and other witnesses at the hearing before the Banking Board.

According to the Bureau's findings this primary service area had 80,000 inhabitants in 1965, after Shepherd Mall was built and occupied by seventy-one business establishments, and only three banks, namely: The Citizens National Bank, located on the block bounded by Classen Boulevard, 23rd Street, Western and 22nd Street; the Northwest National Bank, located at 22nd Street and May Avenue; and the May Avenue Bank, a State bank, located at 4921 North May, in what is termed the "Mayfair Shopping Center".

In its survey of this area, the Bureau contacted 225 families living in it and drew certain conclusions from questions asked them. Among these conclusions were that the average size of families in that area was a fraction over two persons; that family incomes were above average; that 7% of them had resided there less than a year; that 20% of them had resided there less than two years, and 30% had resided there less than three years.

The Bureau concluded from both its 1964 and 1966 surveys that 15%, or 12,000, of the area's inhabitants would utilize the services of a bank in Shepherd Mall. In its 1966 survey, the Bureau contacted each of the 71 business establishments, by that time located in the Mall, and doing an estimated business of $35,000,000.00 annually (as compared to $71,000,000.00 for all downtown Oklahoma City stores). According to the Bureau's report, 91% of these businesses indicated that they would use such a bank. About half of the establishments are units of chain store operations, while the other half are locally and/or independently owned.

The information obtained by the Bureau did not purport to show for just what purpose, or purposes, the 91% of Shepherd Mall businesses (who indicated they wanted one there) desired a bank there, or would patronize it; and the testimony and other evidence introduced on behalf of protestant banks was contemplated to leave the inference that the principal use Shepherd Mall business people would probably make of such a bank is changing money and cashing checks, from neither of which a bank derives profit. Other evidence introduced was contemplated to show that the half of these businesses that were units of chain organizations—if they deposited any money in such a bank at all—would have only so-called "transfer accounts", whose balances would be reduced, and kept to a comparative nominal figure, by transfers made to a larger, or "parent", bank, with which the chain store companies or corporations, transact their major commercial loan business, unavailable to smaller banks with more limited resources. This, together with testimony such as that given by the President of Penn Square National Bank (who stated that his bank has accounts with 88% of the businesses in the large Penn Square Shopping Center, but that these amounted to less than 5% of said bank's total deposits of $15,000,000.00) was contemplated to show that such a bank could not make a profit, if it depended on such accounts alone, and that the majority of people, who might find it convenient to bank at Shepherd Mall already have accounts, and connections, with other banks, which, because of highly competitive practices and/or bank customers' observed, natural reluctance to change their "banking habits", would prevent the proposed bank from obtaining the banking business of the 12,000 people of the Shepherd Mall bank's primary service area indicated by the Bureau's survey.

■ It is unnecessary to describe in detail, or to weigh, all of the evidence above referred to. Suffice it to say that we have thoroughly examined the entire record of the evidence introduced before the Banking Board, on the basis of which the Court of Bank Review determined that said Board's order "was supported by substantial evidence * * *"; and we cannot say that said court's determination is incor-

rect or erroneous. We think there are sufficient facts revealed by the Bureau's 1966 survey and study, supplemented by testimony of Mr. William Frazer and Mr. C. A. Henderson, President of T. G. & Y. Stores Company (who, according to his own undisputed testimony has "located about 400" of that successful Company's 475 retail stores) to show that the proposed bank in Shepherd Mall will be successful, not only because of the savings of time and money and the convenience it will afford the Shepherd Mall businesses, and its greater likelihood, due to its physical connection by (all weather) air conditioned Mall with those businesses, and its indicated financial support from within this enclosed "city within a city", of reaping benefits from the business done there, than enjoyed by other shopping center banks not so strategically and compellingly located, but also because it is indicated that this unique physical connection between the bank's proposed quarters, and those businesses, contains the probable potential of bringing about changes in Mall shoppers' banking habits, as was shown (by the evidence) to have occurred in their shopping habits.

The order of the Court of Bank Review is hereby affirmed.

All of the Justices concur.